IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMMIE L. YOUNG, JR., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 07 C 0533 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| COUNTY OF COOK et al., | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sammie L. Young, Jr. ("Young" or "Plaintiff") has brought this suit against Defendants County of Cook and related parties (collectively "Defendants") under 18 U.S.C. § 1983, and related state law claims. Before this Court are the motions to dismiss of: Defendants Thomas Dart, Salvador Godinez, Scott Kurtovich (collectively "Sheriff Defendants") (Docket No. 17); Defendant William M. Beavers (Docket No. 29); and Defendant County of Cook (Docket No. 32). For the reasons stated below, Defendants' motions are GRANTED.

**FACTS[1]**

Plaintiff was hired as a correctional officer at the Cook County Jail, operated by the Sheriff of Cook County, on October 1, 1978. He was subsequently promoted and transferred to the point where, at the time of his termination in 2006, Plaintiff was working as superintendent of Division 5 of the Cook County Jail ("Division 5"), a medium security facility.

---

[1] These facts are derived from the Plaintiff's complaint and, for the purposes of this motion, are assumed to be true with all reasonable inferences made in favor of the Plaintiff. *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). Affidavits may also be considered, with all conflicts decided in favor of the Plaintiff. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)

-1-

Throughout his employment with the Sheriff of Cook County, Plaintiff has been an active Democrat. He and approximately 100 fellow employees have engaged in door-to-door-campaigning, hanging political signs, passing out literature, and raising money for candidates. Plaintiff also actively campaigned for the election of current Sheriff Tom Dart ("Sheriff Dart"), including the donation of the use of a building. On September 16, 2006, Plaintiff met with William Beavers ("Beavers"), then Alderman of the 7th Ward, at Beaver's request. At this meeting Beavers claimed he was "the most powerfullest politician in Chicago" and that he was the "hog with the big nuts." Beavers encouraged Plaintiff to enlist the aid of his co-workers in helping Todd Stroger ("Stroger") get elected as President of the Cook County Board of Commissioners. Plaintiff did so. Afterward, again at Beavers' request, Plaintiff and his co-workers helped Beavers' daughter Darcel get elected as 7th Ward alderwoman.

On October 20, 2006, Plaintiff encountered Officer Valerie Stubbs ("Officer Stubbs") selling tickets to a Stroger political fundraiser within the Cook County Jail ("Jail"). Any such selling of tickets or soliciting of money for political purposes violates General Order 3.28. After witnessing Officer Stubbs violate this rule, Plaintiff reported the incident to internal affairs, and then filed a written report as well.

At Beavers' request, Plaintiff returned to the Alderman's office on October 28, 2006. By this time, Beavers had become a Commissioner. While there, Beavers tried to convince Plaintiff to drop the complaint against Officer Stubbs. Plaintiff refused. Once again at Beavers' request, the scene was duplicated on December 16, 2006, with Beavers requesting leniency for Officer Stubbs, who was "like family," and Plaintiff refusing to comply. As he was preparing to leave, Plaintiff noticed that Officer Mark Wolfe ("Officer Wolfe") was there in uniform waiting to meet

with Beavers. At that point, Beavers explained that Wolfe was there "to get [the Commissioner] to promote him to sergeant."

Plaintiff discovered that Officer Wolfe had been off-duty that day and therefore may have violated a rule against wearing one's uniform at those times. On December 18, 2006, Plaintiff wrote a disciplinary report regarding Officer Wolfe and the perceived violation of General order 3.12B(1) and (3). Beavers contacted Plaintiff the next day, asking questions about the Wolfe incident and berating Plaintiff. On December 19, 2006, Plaintiff reported the Beavers phone call to Internal Affairs Chief Investigator Kaufman ("Kaufman"), orally and in writing. Plaintiff also filed a written report to Investigator April S. Williams of the Cook County Board of Ethics. To date, Plaintiff has not received a response to these complaints.

Over the course of twenty-nine years, Plaintiff satisfactorily completed the duties of his positions and was generally held in high esteem by his colleagues. On January 11, 2007, Plaintiff met with Executive Director Godinez ("Godinez") at his office, along with Assistant Executive Director Scott Kurtovich ("Kurtovich"). Godinez informed Plaintiff that he was being reassigned "to Division 10 as a sergeant." Plaintiff began work in Division 10 on January 16, 2007. The change in position involved a decrease in salary, fewer pension benefits, and removal of earned administrative days. It also forced Plaintiff to interact regularly with the worst inmate population, at least one of whom was under ongoing investigation in a matter with which Plaintiff had been involved. In his new position, Plaintiff found that he was required to answer to younger and less-experienced officers, at least one of whom he himself had trained.

Political issues are endemic to the Sheriff's Office.[2] While working as superintendent, Plaintiff was required to purchase a number of tickets for political fundraising and social events. Plaintiff refused to do this. The Sheriff's Office practiced a "closed" hiring system, whereby applications and transfers could be processed without the official hiring process by means of internal recommendations and lists. Other employees who did not challenge the status quo, and who were less qualified as a result of disciplinary actions or a general failure to distinguish themselves, were nonetheless allowed to maintain their positions. Generally, when a new administration takes over at the Sheriff's Office, only those individuals with conflicting political orientations are re-assigned.

On January 29, 2007, Plaintiff filed this action based on events related to his termination, claiming that all Defendants are liable for: civil rights violations under 18 U.S.C. § 1983 (Count I); unlawful retaliation under 18 U.S.C. § 1983 (Count II); violation of the Local Government Employees Political Rights Act of the State of Illinois 50 ILCS 135 et seq. ("LGEPRA") (Count III); and intentional infliction of emotional distress (Count IV).[3]

### STANDARD OF REVIEW FOR MOTION TO DISMISS

On a motion to dismiss, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. Plaintiff. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of*

---

[2] Plaintiff's allegations of inappropriate political involvement are disturbing and could possibly raise a claim under a different theory of liability. However, Plaintiff's filings only raise a constitutional claim of protected political speech. This Court proceeds accordingly.

[3] In Plaintiff's complaint, this claim is titled "Infliction of Emotional Distress," but it is clear from subsequent language that Plaintiff is referring to intentional, rather than negligent, infliction.

*Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A complaint that complies with the Federal Rules of Civil Procedure cannot be dismissed because it fails to allege facts. The Rules require simply that the complaint state a claim; they do not require the complaint to plead facts that would establish the validity of that claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Id.* (citing *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). The Seventh Circuit has held that stating a claim in a complaint in federal court requires only "a short statement, in plain (that is, non-legalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Plaintiffs "don't have to file long complaints, don't have to plead facts, don't have to plead legal theories." *Id.*

## ANALYSIS

Defendants maintain that this Complaint should be dismissed for a variety of reasons and with respect to a variety of parties. Because the claims and defenses at this stage can be addressed through the resolution of a single matter, this Court does not find it necessary to summarize those issues here.

1. Retaliation in violation of Section 1983 (Count II)[4]

In order to properly allege a First Amendment retaliation Section 1983 claim, Plaintiff must allege: (1) he was engaged in constitutionally protected speech; (2) the protected speech was a "motivating factor" in the adverse employment action; and (3) that the defendant cannot prove by the preponderance of the evidence that the same adverse employment action would have occurred absent the protected speech. *See Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (citing *Mt. Healthy City School District Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

The Supreme Court has recently added a preliminary determination that must be made when deciding whether a public employee's speech warrants constitutional protection. *See Mills v. City of Evansville, Ind.*, 452 F.3d 646 (7th Cir. 2006) (expanding protected speech analysis in light of *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006)). In *Garcetti*, the Court determined that a public employee has no recourse to First Amendment protections where the underlying actions are performed in satisfaction of their job duties. 126 S.Ct. at 1953 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). The Seventh Circuit has since applied this ruling in a variety of circumstances. *See, e.g., Sigsworth v. City of Aurora, Ill.*, 2007

---

[4]Plaintiff's first two counts must be distinguished. Count I seeks redress for an alleged "civil rights violation," but focuses in its language on conspiratorial activities. *See* Compl. ¶¶ 68-75. Count II seeks redress for "Retaliation," incorporates the language of the prior count, but also includes language conforming to a claim for retaliation. *Id.* ¶¶ 84-86. This Court will therefore treat Count I as a claim for conspiracy to contravene § 1983. To the extent that Plaintiff has intended to bring another count based on Defendants' efforts to suppress his constitutional rights – without anything more – the claim is duplicative and need not be considered twice. *See Pavilion Hotel Corp. v. Koch*, 2000 WL 51817 (N.D. Ill. 2000). In any event, Plaintiff does not appear to have objected to Defendants' similar interpretation.

WL 1518536, at *5 (7th Cir., May 25, 2007) (upholding dismissal, finding that plaintiff did not speak "as a citizen on a matter of public concern," in light of admission that he was acting "in furtherance of the policy of cooperation") (declining to apply public/private balancing of *Pickering* in light of antecedent *Garcetti* test); *Spiegla,* 481 F.3d 961 (vacating jury judgment and award in light of *Garcetti*, where plaintiff was retaliated against after reporting a security breach in a manner that fell within her "duty to ensure the prison's safety and security"); *Mills,* 452 F.3d at 648 (upholding summary judgment against plaintiff based on *Garcetti*, where actions were taken "on duty, in uniform, and engaged in discussion with her superiors...speaking in her capacity as a public employee contributing to the formation and execution of official policy"); *see also Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007) (upholding the applicability of Garcetti to adverse employment action on interlocutory appeal, but deferring to factfinder on whether the actions in question fell within the scope of plaintiffs' employment).

The Supreme Court's narrow holding "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes," *Garcetti*, 126 S.Ct. at 1960, is not a blanket rule that can be blindly applied to deny free speech protections to public employees. *See Sigsworth*, 2007 WL 1518536, at *4. The ruling did not overrule whistleblower protection for employees' employment obligations. *Id.* Also, the ruling provided little guidance as to how the lower courts are to go about defining an employee's "official duties." As a result, analysis under *Garcetti* will likely be a fact-intensive analysis in most instances. However, here we are faced with one of the rare instances in which the Plaintiff has indeed "plead himself out of court," *see Bennett v. Schmidt*, 153 F.3d 516, 519

(7th Cir. 1998), as he himself has answered the potentially difficult question of whether or not he was acting within the scope of his job duties.

Plaintiff repeatedly states in unequivocal terms that he was simply following the dictates of his position when he was filing complaints and reports against his fellow officers. As the Sheriff Defendants summarize Plaintiff's filings:

> In the Complaint, plaintiff affirmatively alleges that he was "acting in his official capacity" and "in the commission of his duties" as the Superintendent when engaging in the conduct at issue." (See, e.g., Compl. ¶ 29-31, 38, 76). For example, Plaintiff claims he was retaliated against for submitting a December 19, 2006 report to the Assistant Executive Director of the Cook County Department of Corrections (the "CCDOC"), in which he complained of purportedly wrongful behavior by Commissioner Beavers. (Compl. ¶ 82-84, Ex. A(VIII)). Not only did Plaintiff have an implied duty to report conduct of other County employees that he felt was improper, he had an explicit duty to do so under CCDOC General Order 3.8(III)(G) [citing relevant language]. Plaintiff squarely alleges that his "employment was governed" by these General Orders. (Id. ¶ 25). Further, Plaintiff specifically alleges that the "intimidating" phone call from Beavers was a result of Plaintiff engaging in his "responsibilities and official duties." (Id. ¶¶ 27, 28, 31, 32, 40).

Sheriff Defs. Summ. J. Resp. at 5-6.

In responding to Defendants' motions to dismiss, Plaintiff focuses almost entirely on the relationships between the parties. *See, e.g.*, Defs. Resp. to Sheriff Defs. Summ. J. Nowhere does he allege that he was speaking "*as a citizen* on a matter of public concern," *see Sigsworth*, 2007 WL 1518536, at *2 (citing *Garcetti v. Ceballos*, 126 S.Ct. at 1957; *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)) (emphasis added), and he therefore fails to counter the clear statements to the contrary found in his complaint. Nowhere in his responses to Defendants' motions to dismiss does he address the challenges presented to his case by *Garcetti*.

Whether or not parties responded to Plaintiff's actions with politically-motivated intentions, this does not necessarily make the substance of Plaintiff's actions political. Perhaps as a matter of principal, Young removed himself from questions of politics completely, ignored the apparent interests of the Democratic party machinery and even his own professional self-interests, and simply executed the duties of his position. These alleged actions, while perhaps commendable, under *Garcetti* do not amount to First Amendment speech worthy of Constitutional protections. *See Spiegla*, 481 F.3d at 967 ("That [Plaintiff]'s statements highlighted potential misconduct by prison officers does not change the fact that she was speaking pursuant to her official responsibilities, not as a citizen 'contributi[ng] to the civic discourse.'") (quoting *Garcetti*, 126 S.Ct. at 1960). Plaintiff's actions do not amount to constitutionally-protected speech, and his Section 1983 claims therefore lack this necessary element. *Spiegla*, 481 F.3d at 965. Defendants' motions for summary judgment are therefore GRANTED with respect to count I.

3. Conspiracy to violate Plaintiff's First Amendment rights (Count I)

In a civil conspiracy, two or more persons act in concert to commit an unlawful act or to commit a lawful act by unlawful means. *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). The principle elements of a civil conspiracy are an agreement between the parties to inflict wrong or injury on another and an overt act resulting in damages. *Id.* Where no constitutional rights are denied by the alleged conspiracy, there can be no section 1983 liability for conspiracy. *See Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) ("For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiff's constitutional rights."); *Vukadinovich v. Zentz*, 995 F.2d 750 (7th Cir. 1993) ("To establish a conspiracy, Plaintiff must

have demonstrated an agreement and a deprivation of his constitutional rights...Without such a violation, there can be no conspiratorial liability.") (citations omitted). Therefore, summary judgment is GRANTED with respect to Count II.

    4.    <u>Remaining state law claims</u>

Plaintiff also seeks redress for alleged state law violations under LGEPRA and the common law tort of intentional infliction of emotional distress. However, in light of the fact that this Court has dismissed all federal causes of action, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Carr v. CIGNA Sec., Inc.*, 95 F.3d 544 (7th Cir. 1996). Therefore, Defendants' motions to dismiss are GRANTED with respect to Counts III and IV, without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED with prejudice on all federal counts, and without prejudice on all state counts. This case is CLOSED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **June 8, 2007**